**The STATE of Ohio, Appellee,**

v.

**GARLAND, Appellant.** ▮

[Cite as *State v. Garland* (1996), 116 Ohio App.3d 461.]

Court of Appeals of Ohio,
Twelfth District, Fayette County.

No. CA96–05–011.

Decided Dec. 16, 1996.

462

464

*Steven H. Eckstein,* Fayette County Prosecuting Attorney, for appellee.

*Harry G. Beyoglides, Jr.,* for appellant.

KOEHLER, Judge.

Defendant-appellant, Lance Garland, appeals from a judgment of conviction entered upon a jury verdict in the Fayette County Court of Common Pleas,

finding appellant guilty of involuntary manslaughter in violation of R.C. 2903.04(B). We affirm.

On June 8, 1995, appellant was traveling south on White Oak Road, approaching the intersection with Harrison Road. James Pennington was driving east on Harrison Road, approaching the same intersection. There was a stop sign for White Oak Road but no stop sign for Harrison Road.

Appellant ran the stop sign at White Oak and Harrison and hit the truck driven by Pennington. Pennington died from injuries sustained in the accident. Appellant was charged with involuntary manslaughter pursuant to R.C. 2903.04(B),[1] with the R.C. 4511.43(A) stop-sign violation as the underlying minor misdemeanor. The case was tried to a jury, which found appellant guilty as charged. On appeal, appellant raises the following assignments of error:

Assignment of Error No. 1:

"The trial court erred by overruling the defendants motions for acquittal at the close of the state's case and after the jury was discharged."

Assignment of Error No. 2:

"The trial court committed a multitude of error-laden decisions which cumulatively resulted in a substantial denial of due process and violated the defendant's right to a fair trial."

Assignment of Error No. 3:

"The trial court erred in overruling the defendant's motion to suppress his statement."

In his first assignment of error, appellant argues that the trial court erred in overruling his motion for acquittal. Under Crim.R. 29(A), a trial court will not enter a judgment of acquittal in favor of the defendant if the evidence is such that reasonable minds could differ as to whether the state has proven every material element of the crime beyond a reasonable doubt. *State v. Evans* (1992), 63 Ohio St.3d 231, 248, 586 N.E.2d 1042, 1056–1057, certiorari denied (1992), 506 U.S. 886, 113 S.Ct. 246, 121 L.Ed.2d 179.

Appellant argues first that a charge of involuntary manslaughter where the underlying offense is a minor misdemeanor results in cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.

---

1. R.C. 2903.04, defining "involuntary manslaughter," provides in part:

"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor."

The constitutional prohibition against cruel and unusual punishment has been interpreted to prohibit barbaric punishment, as well as sentences which are disproportionate to the crime committed. *Solem v. Helm* (1983), 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637, 645. The Ohio Supreme Court has held that "to warrant constitutional intercession, the 'penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" *State v. Frambach* (1992), 81 Ohio App.3d 834, 842, 612 N.E.2d 424, 429, quoting *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 70, 30 O.O.2d 38, 39–40, 203 N.E.2d 334, 336.

A prosecutor may charge a defendant under any statute that proscribes the particular criminal behavior involved. *State v. Stanford* (Aug. 30, 1996), Trumbull App. No. 95–T–5358, unreported, 1996 WL 537856. A constitutional violation does not arise merely because a prosecutor pursues the offense carrying the greater penalty. *Id.* The General Assembly in enacting R.C. 2903.04(B) "'clearly intended * * * to permit a charge of manslaughter against persons involved in vehicular fatalities despite the more specific provisions for aggravated vehicular and vehicular homicide.'" *State v. Chippendale* (1990), 52 Ohio St.3d 118, 122, 556 N.E.2d 1134, 1138, quoting *State v. Davis* (1983), 13 Ohio App.3d 265, 270, 13 OBR 329, 334–335, 469 N.E.2d 83, 88.

In this case, witness Traci Barton testified that she was driving on White Oak Road just prior to the accident and observed appellant on Kellough Road approaching the intersection with White Oak. Barton was not sure whether appellant was going to stop at the stop sign there, so she slowed down. Appellant did stop and then pulled onto White Oak behind Barton. As Barton came to the Harrison Road stop sign, she saw appellant coming up behind her so fast that Barton was afraid her vehicle would be rear-ended. Barton made a turn onto Harrison, then looked in her rear view mirror and saw appellant's car hit Pennington's truck.

Appellant admitted in his statement to police on the scene that he did not stop for the stop sign. The trial court noted that appellant had six prior traffic violations within the past five years for either speeding or failure to control.

The sentence imposed by the trial court falls within the range of punishments contained within the sentencing statute for this offense.[2] There is no evidence to suggest that appellant's sentence would shock the conscience of the community. See *Frambach*, 81 Ohio App.3d at 842, 612 N.E.2d at 428–429. Accordingly, the punishment imposed cannot be deemed cruel and unusual.

---

2. The trial court imposed an indefinite sentence of five to ten years.

Appellant argues next that the state should have charged him under the specific vehicular homicide statute rather than the more general involuntary manslaughter statute. Given our discussion of appellant's first argument, we find no merit in appellant's contention. See *Chippendale,* 52 Ohio St.3d at 122, 556 N.E.2d at 1137–1138. See, also, *Stanford, supra,* Trumbull App. No. 95–T–5358, unreported.

Reasonable minds could differ in this case on whether the state had proven the elements of the involuntary manslaughter charge beyond a reasonable doubt. Therefore, the trial court's denial of appellant's Crim.R. 29 motion for acquittal was proper. See *Evans,* 63 Ohio St.3d at 248, 586 N.E.2d at 1056–1057. Appellant's first assignment of error is overruled.

■ Appellant argues in his second assignment of error that he was deprived of a fair trial due to cumulative error by the trial court. First, appellant contends that the trial court erred in overruling his objection to the prosecutor's two references in his opening statement to the stop-sign violation as a "misdemeanor" rather than a "minor misdemeanor."

Under R.C. 2901.02(D):

"Regardless of the penalty that may be imposed, any offense specifically classified as a felony is a felony, and any offense specifically classified as a misdemeanor is a misdemeanor."

After appellant objected, even though the objection was overruled, the prosecutor specifically referred to the stop-sign violation as a minor misdemeanor in the remainder of his opening statement. The jury was instructed on the stop-sign offense as a minor misdemeanor. Considering the legislative intent to classify all misdemeanors from first degree to minor as "misdemeanors" for descriptive purposes, the prosecutor's opening statement as a whole, and the jury instruction given, we find no merit in appellant's argument. See *Evans,* 63 Ohio St.3d at 237–238, 586 N.E.2d at 1049–1050; *State v. Kuhajda* (Mar. 31, 1993), Portage App. No. 92–P–0050, unreported, 1993 WL 150475.

■ Next, appellant argues that the trial court usurped the jury's role by excluding evidence of Pennington's speed, specifically by excluding the testimony of appellant's expert witness as to Pennington's speed and the proximate cause of Pennington's death.

■ A trial court's decision as to whether evidence should be admitted will not be reversed on appeal absent an abuse of discretion. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 25, 514 N.E.2d 394, 400–401. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 148–149.

"Proximate result" means:

"[A] defendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct; he will be held responsible for consequences which are direct, normal, and reasonably inevitable—as opposed to extraordinary or surprising—when viewed in the light of ordinary experience. In this sense, then, 'proximate result' bears a resemblance to the concept of 'proximate cause' in that defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of the risk created by his conduct." (Citation omitted.) *State v. Losey* (1985), 23 Ohio App.3d 93, 95, 23 OBR 158, 160, 491 N.E.2d 379, 382.

A decedent's contributory negligence does not exonerate criminal liability under R.C. 2903.04(B) unless such negligence was the sole proximate cause of the accident. *State v. Vansickle* (Mar. 11, 1992), Licking App. No. CA–3682, unreported, 1992 WL 61579. See, also, *Cleveland v. Pellech* (1983), 8 Ohio Misc.2d 37, 39, 8 OBR 580, 582–583, 457 N.E.2d 961, 963–964.

Appellant argues that if Pennington had not been speeding, the two never would have met in the intersection at the precise moment of the collision. However, by the same token, if appellant had not run the stop sign, the accident never would have occurred. Since it cannot be said that the accident was the sole proximate result of Pennington's speed, it was not an abuse of discretion for the trial court to exclude such evidence on the basis of relevancy. See *Apanovitch*, 33 Ohio St.3d at 25, 514 N.E.2d at 400–401.

Next, appellant argues that the trial court erred in admitting the testimony of a responding officer at the accident scene, Fayette County Deputy Sheriff Robert Russell, as expert testimony without proper foundation. The initial determination of whether a witness qualifies to testify as an expert rests with the trial court and will not be reversed absent an abuse of discretion. *Kitchens v. McKay* (1987), 38 Ohio App.3d 165, 169, 528 N.E.2d 603, 606–607.

Expert testimony is admissible where (1) the witness is properly qualified as an expert, and (2) the facts or data upon which the expert opinion is based were either perceived by the witness or admitted as evidence at trial. *State v. Minor* (1988), 47 Ohio App.3d 22, 24, 546 N.E.2d 1343, 1347. The record in this case shows that in addition to being present at the accident scene, Russell testified to twenty-three years of experience with the sheriff's department, investigating seventy-five to one hundred accidents per year. Russell also stated that he completed the Northwestern Traffic Institute course in accident investigation. We conclude that the state established an adequate foundation for Russell's expert testimony and find no abuse of discretion by the trial court in admitting it as such.

Next, appellant argues that although the trial court granted the state's pretrial motion to exclude evidence of Pennington's failure to wear a seat belt and excluded evidence of Pennington's speed at trial, the court admitted the

accident report into evidence. The accident report reflects that Pennington was not wearing a seat belt and shows a question mark for Pennington's estimated speed. The trial court would not allow defense counsel to cross-examine Russell about the question shown for Pennington's estimated speed.

As we have previously discussed, the trial court was within its discretion in excluding evidence of Pennington's speed. The accident report contained no reference other than a question mark. Even if the report did indicate that Pennington was not wearing a seat belt, the motion to exclude that information came from the state, and appellant fails to show how he was prejudiced by its admission. See *State v. Parson* (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 488, 453 N.E.2d 689, 691–692.

 Next, appellant argues that the trial court erroneously denied the defense's request for a jury instruction that, in order to find appellant guilty, the jury would have to find that Pennington was proceeding in a lawful manner and thus had the right of way. It is within the sound discretion of the trial court to refuse to admit proposed jury instructions that are either redundant or immaterial to the case. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph two of the syllabus.

 Failure to stop a motor vehicle at a stop sign and yield the right of way in violation of R.C. 4511.43 continues to be a stop-sign violation as the driver proceeds through an intersection to the point of collision with a vehicle proceeding on a through highway. *Lehman v. Westhoven* (1967), 10 Ohio App.2d 66, 68, 39 O.O.2d 133, 134–135, 226 N.E.2d 795, 796–797. There is no question in this case that appellant failed to stop for the stop sign, regardless of Pennington's speed on the through street. See *State v. Knadler* (1957), 105 Ohio App. 135, 5 O.O.2d 418, 151 N.E.2d 763.

The issue of Pennington's speed as it affected his right of way being immaterial to the case, we find no abuse of discretion in the trial court's refusal to give appellant's requested jury instruction. See *Bostic*, at paragraph two of the syllabus. Further, we find no error, individually or cumulatively, in any of the trial court's actions as advanced by appellant. Appellant's second assignment of error is overruled.

 Appellant argues in his third assignment of error that the trial court erred in overruling his motion to suppress his statement to police at the accident scene, which was made without the benefit of a *Miranda* warning. Fayette County Deputy Sheriff James Sears testified that when he arrived on the scene, he located the witnesses to the accident, including appellant, and spoke with them. When Sears took down appellant's statement, appellant admitted that he had not stopped at the stop sign.

In *State v. Deem* (June 22, 1987), Butler App. No. CA86–12–176, unreported, 1987 WL 13056, we held that a police officer's questioning of the accused at the

scene of an automobile accident was only an attempt to elicit basic facts relative to the accident investigation. *"Miranda* warnings therefore were not required at that time because the questioning constituted on-scene questioning done as part of the normal fact-finding process and not custodial interrogation." (Citation omitted.) *Id.* at 5. Appellant's third assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., and POWELL, J., concur.