OPINION
{¶ 1} Defendant-appellant, William Brown, appeals the decision of the Butler County Court of Common Pleas to reopen his suppression hearing, to deny his motion to suppress evidence, and to impose a greater than minimum sentence upon him for aggravated vehicular assault. We affirm the decision of the trial court.
 {¶ 2} On July 18, 2001, appellant was operating his vehicle on Hamilton — Cleves Road at approximately 10:00 p.m. Appellant's vehicle crossed the centerline and struck Patricia Winterrod's vehicle in a head-on collision. Winterrod and her passenger, Carolyn Johnson, were both injured in the collision.
 {¶ 3} Officers from the Butler County Sheriff's Office were dispatched to the accident scene. When Deputy Dale Paulus arrived, he noticed appellant leaning up against his vehicle. Deputy Paulus approached appellant and asked him if he was the driver of the vehicle. Upon appellant's affirmative reply, Deputy Paulus asked him for his driver's license.
 {¶ 4} Appellant attempted several times to remove his wallet from his back pocket. Deputy Paulus observed that appellant was having difficulty removing his wallet, he was unsteady on his feet, had a strong odor of alcohol about his person, bloodshot eyes, and slurred speech. Deputy Paulus asked appellant if he had anything to drink that night. Appellant replied that he had been to a bar in Millville and he had also been to the C and C Lounge in Ross, Ohio where he had at least two drinks.
 {¶ 5} Deputy Paulus took appellant aside and conducted three field sobriety tests on him. Deputy Paulus administered a horizontal gaze nystagmus ("HGN") test, a one-legged stand test, and then a walk-and-turn test. Appellant's performance indicated to Deputy Paulus that appellant was intoxicated. Appellant was taken to the Sheriff's headquarters where a breath test was administered. Appellant's breath test resulted in a .238 BAC reading.
 {¶ 6} Appellant was indicted for two counts of aggravated vehicular assault, two counts of vehicular assault, two counts of driving under the influence of alcohol, and driving upon the left side of the roadway. Appellant filed a motion to suppress the statements he made to Deputy Paulus and other evidence. A suppression hearing was held on December 3, 2001. The HGN test was the only evidence the trial court suppressed.
 {¶ 7} Appellant entered a no contest plea to the indictment and was convicted and sentenced for two counts of aggravated vehicular assault, driving under the influence of alcohol, and driving upon the left side of the roadway. Appellant was sentenced to a total of four years of incarceration and fined a total of $3,600. Raising three assignments of error, appellant appeals his greater than minimum sentence and the decisions of the trial court during the suppression hearing:
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "The court abused its discretion in allowing the State to re-open the suppression hearing."
 {¶ 10} At appellant's suppression hearing, the state did not present evidence that the proper National Highway and Traffic Safety Administration standards were followed during appellant's HGN field sobriety test. Appellant argues that the trial court abused its discretion when it allowed the state to reopen the suppression hearing and present additional evidence after the state rested.
 {¶ 11} The question of whether to reopen a case and accept additional evidence "is within the sound discretion of the trial court."Columbus v. Grant (1981), 1 Ohio App.3d 96, 97. Decisions concerning the conduct of proceedings "will not be reversed on appeal absent an abuse of that discretion." State v. Rains (1999), 135 Ohio App.3d 547, 554. A reviewing court should not substitute its judgment for that of the trial court in matters of admission or exclusion of evidence. State v.Finnerty (1998), 45 Ohio St.3d 104, 107. A trial court does not abuse its discretion unless it acts arbitrarily, unreasonably, or unconscionably.State v. LaMar, 95 Ohio St.3d 181, 191, 2002-Ohio-2128 at ¶ 40.
 {¶ 12} At the suppression hearing, the state failed to prove whether Deputy Paulus asked appellant if he used glasses or contact lenses before attempting the HGN test. The state was allowed to reopen the suppression hearing after it rested and present additional evidence. The only evidence presented was Deputy Paulus' testimony that he asked appellant "if he used glasses" and that he performed the HGN test "twice in each of [appellant's] eyes." In addition, we note that at the time the court reopened the evidence, the case had not been terminated, the court had not yet issued a judgment entry regarding appellant's motion to suppress, and the court had not yet issued a final judgment in the case. See State v. Callihan (1992), 80 Ohio App.3d 184, 195; Grant,1 Ohio App.3d at 98.
 {¶ 13} The trial court's decision to reopen the suppression hearing was not arbitrary, unreasonable, or unconscionable. Furthermore, appellant did not suffer any prejudice from the trial court's decision to reopen the suppression hearing. Deputy Paulus' testimony regarding whether he asked appellant if he used glasses and the number of times he performed the HGN test was inconsequential as the HGN test was ultimately suppressed. The first assignment of error is overruled.
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "The court erred in not supressing evidence."
 {¶ 16} Appellant asserts that when he made statements at the scene of the accident to Deputy Paulus, he was not free to leave and he was not given his Miranda warnings. Therefore, appellant maintains that he was in a custodial interrogation and the statements should have been suppressed.
 {¶ 17} Deputy Paulus testified that he arrived at the accident scene, he approached appellant and asked him if he was the driver of the vehicle. Upon appellant's affirmative reply, Deputy Paulus asked him for his driver's license. Deputy Paulus then asked him whether or not he had been drinking. Appellant admitted to drinking several alcoholic beverages that evening. Deputy Paulus testified that appellant was not free to leave at the time of the inquiry because "it was an accident scene."
 {¶ 18} A police officer's "questioning of the accused at the scene of an automobile accident [is] only an attempt to elicit basic facts relative to the accident investigation." State v. Garland (1996),116 Ohio App.3d 461, 470. A police officer is permitted to ask a detained motorist "a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty (1984), 468 U.S. 420, 439,104 S.Ct. 3138.
 {¶ 19} Therefore, the roadside questioning of a detained motorist does not constitute a custodial interrogation for the purposes of theMiranda rule. Berkemer, 468 U.S. at 440, 104 S.Ct. at 3150; Pennsylvaniav. Bruder (1988), 488 U.S. 9, 10-11, 109 S.Ct. 205. Consequently, "Miranda warnings [are] not required at the time because the questioning constitute[s] on-scene questioning done as part of the normal fact-finding process and not custodial interrogation." Garland,116 Ohio App.3d at 470.
 {¶ 20} Thus, the trial court was correct in refusing to suppress appellant's statements to Deputy Paulus at the scene of the accident because the statements were not made during a custodial interrogation. The second assignment of error is overruled.
 {¶ 21} Assignment of Error No. 3:
 {¶ 22} "The court erred in not imposing the minimum sentence."
 {¶ 23} Appellant argues that "the trial court must impose the minimum term for an offender who, like appellant, has not previously served a prison term unless it finds on the record either that a minimum sentence would demean the seriousness of the offender's conduct." Appellant maintains that the trial court failed to pair the statutory language with adequate findings. Therefore, he argues that the trial court's failure to impose the minimum sentence was error.
 {¶ 24} R.C. 2929.14(B) provides as follows:
 {¶ 25} "Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925 of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless * * * the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 26} "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned * * * before it can lawfully impose more than the minimum authorized sentence." State v. Edmonson, 86 Ohio St.3d 324,1999-Ohio-110, syllabus. However, the Ohio Supreme Court has recently held that "when imposing a non-minimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing." State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, paragraph two of the syllabus.
 {¶ 27} Rather than imposing the shortest prison term authorized, the trial court in the present case sentenced appellant to serve a term of three years in prison and pay a fine of $2,000 for the first count of aggravated vehicular assault. The trial court sentenced appellant to a consecutive one-year term and ordered him to pay a $1,000 fine for the second count of aggravated vehicular assault. Appellant was sentenced to a concurrent six-month term and a $500 fine for driving under the influence of alcohol, and he was fined $100 for driving upon the left side of the roadway.
 {¶ 28} At the sentencing hearing, the trial court stated, "the court finds that the victims in this case did suffer serious physical harm." The court also observed that "there was a prior adjudication of driving under the influence and it was a failure to acknowledge a pattern of drug or alcohol abuse that related to this offense. And those are the factors which lend itself to recidivism likely."
 {¶ 29} The trial court noted that it is "aware that it's exceeding the minimum for the first time prison term sentence. The defendant has never been in prison before. Now the Court does feel that the shortest prison term would demean the seriousness of the defendant's conduct and for the reasons which I said before on the record. But also understood is sentencing the defendant to consecutive sentences, the Court finds that consecutive sentences are necessary to punish the defendant and they are not disproportionate to the seriousness of the defendant's conduct and the danger that the defendant poses to the public." Furthermore, the court also found "that the harm caused by the defendant was so great or unusual that no single prison term for any one of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the defendant's conduct."
 {¶ 30} It is clear from the record that the court considered how R.C. 2929.14(B) applied to the facts of the case. We find that the common pleas court complied with R.C. 2929.14(B) and relevant case law when it made the finding and gave the reasons supporting the finding orally on the record at the sentencing hearing.
 {¶ 31} Appellant also argues that "the trial court erred in using `revenge' as an aspect of sentencing appellant." Appellant maintains that a sentence imposed, "at least in part, on a theory of revenge, is improper."
 {¶ 32} At the sentencing hearing the trial court stated, "sentencing has a number of aspects to it. It has the punishment aspect and rehabilitation as an aspect. It has some of revenge as an aspect. It has an aspect of what damage the defendant caused by his act that night, going out and getting drunk and going on the road."
 {¶ 33} There is more than one sense of the word "revenge." Webster's Third New World International Dictionary defines "revenge" as1: to inflict harm or injury in return for (as an injury or insult) 2: to avenge or seek vengeance for a wrong done 3: to punish. R.C. 2929.11(A) states that one of the "overriding purposes of felony sentencing" is to "punish the offender."
 {¶ 34} We find the trial court did not commit prejudicial error by stating revenge is an aspect of sentencing since one of the definitions of the word revenge is "to punish" and R.C. 2929.11(A) states that one of the overriding purposes of felony sentencing is to "punish the offender." Accordingly, appellant's third assignment of error is overruled.
 {¶ 35} Judgment affirmed.
Valen, P.J., and Powell, J., concur.