City of Cleveland *v.* Pellech.

(No. 83-CRB-2243—Decided
May 31, 1983.)

Cleveland Municipal Court.

*Mr. Jose Feliciano,* police prosecutor,
and *Mr. David M. Lynch,* for plaintiff.
*Mr. Harry J. Caito,* for defendant.

ADRINE, J. The defendant has moved this court for an order dismissing the complaint which charges him with vehicular homicide, in violation of R.C. 2903.07. The prosecution and the defense are in substantial agreement with regard to the underlying facts of this event. Therefore, for the purpose of this motion, the parties have submitted an agreed statement of facts to the court for its consideration.

The agreed statement of facts conclusively establishes the following events:

On Sunday, February 6, 1983, at approximately 2:26 a.m., the defendant, Thomas Pellech, operating a 1972 Chevrolet Nova, struck and killed a pedestrian, one James McQueeney. The accident occurred at or near the intersection of Lorain Avenue and Norton Road on Cleveland's Westside. At the time of the accident, the defendant was eastbound on Lorain Avenue.

The Accident Investigation Unit of the Cleveland Police, based on its examination of the site, estimated that the defendant's vehicle was traveling at better than fifty miles per hour in the moments immediately preceeding impact. That estimate is more than twice the twenty-five miles per hour speed limit posted for that location.

Skidmarks on Lorain Avenue indicated that the defendant's vehicle began to skid approximately forty-five feet prior to striking the decedent. It continued skidding for at least another fifty feet after impact. The decedent was hurled approximately ninety-five feet through the air and apparently died on the scene.

At the time of the accident, the decedent was neither in nor near a designated crosswalk. In fact, the nearest crosswalk was approximately one hundred seventy-three feet west of the point of impact.

The police investigation also established that the defendant's vehicle was in good working order and that the section of roadway involved was dry, well-lighted, and free of defects at the time of the accident.

Perhaps the most significant finding of the police inquiry was that both the defendant and the decedent had consumed considerable amounts of alcoholic beverage immediately before the accident. The defendant's blood alcohol content registered a .14 percent on the intoxilyzer examination which he took immediately following his arrest on the instant charge. The Cuyahoga County Cor-

oner's office reported that the percentage of alcohol in the decedent's blood was .11.

The defendant argues that, as a matter of law, the foregoing facts are insufficient to establish all of the essential elements of the offense with which he is charged. More particularly he argues that the decedent's voluntary intoxication and illegal conduct ("jaywalking") would force a finder of fact to improperly speculate as to the true proximate cause of the accident and decedent's death.

The prosecution counters the defendant's arguments by maintaining that the contributory negligence of the decedent would only be available to the defendant as a defense if it were the sole proximate cause of the accident and the resulting death, which the prosecution claims, it was not.

R.C. 2903.07 reads, in pertinent part: "No person, while operating or participating in the operation of a motor vehicle * * *, shall negligently cause the death of another." A survey of the existing authority is useful in determining whether or not the defendant is entitled to raise the decedent's contributory negligence as a bar to further prosecution in this case.

In Ohio, the general rule is that the contributory negligence of the victim is not a defense. The courts, nevertheless, may consider contributory negligence if it is the sole proximate cause of the accident. See Goldsmith, Involuntary Manslaughter: Review and Commentary on Ohio Law (1979), 40 Ohio St. L.J. 569, 600.

In *Prince* v. *State* (1919), 12 Ohio App. 347, the court, quoting from a hornbook of that day, Berry on Automobiles (2 Ed.), at Section 902, made the following pronouncement:

" 'While the contributory negligence of the deceased is no defense, still the conduct of the deceased must be considered in determining the proximate, or actual, cause of the death.' " *Id.* at 350.

Further in its opinion the *Prince* court went on to state:

"* * * [T]he contributory negligence of the decedent is not a defense unless it is the sole proximate cause of the accident." *Id.* at 351.

The court in *State* v. *Chambers* (1977), 53 Ohio App. 2d 266 [7 O.O.3d 326], in speaking about causal connection, quoted Wharton on Homicide:

" ' "[O]ne whose wrongful act hastens or accelerates the death of another, or contributes to its cause, is guilty of homicide, though other causes co-operate * * *." ' " *Id.* at 272.

In *Klug* v. *State* (App. 1928), 27 Ohio Law Reptr. 477, a case with a number of similarities to the one *sub judice*, the defendant was found guilty of manslaughter for striking and killing two "jaywalking" pedestrians with his automobile. It was determined that, at the time of the accident, the defendant was under the influence of alcohol. In that case, as in this one, the issue of the decedents' contributory negligence was raised.

In addressing that issue the appellate court said: "In this case it is charged that the decedents were violating this law, and crossing the street between intersections. That was an element to take into consideration in the determination of the question of proximate cause, but in no manner can it relate to the question of contributory negligence, as in a civil case, the essential elements of the crime as above noted must be proven, and contributory negligence is no justification, excuse or defense unless it is equivalent and rises to the proportion of such proximate cause on the part of the decedents, as resulted in their deaths." *Id.* at 479.

The Ohio Supreme Court, in *State* v. *Wells* (1945), 146 Ohio St. 131 [32 O.O. 59], in overturning an appellate court's decision reversing a lower court verdict finding the defendant guilty of second degree manslaughter, held:

" 'One who is engaged in the perform-

ance of an unlawful act must take the criminal consequences of whatever happens to third persons as a result of that act.' " *Id.* at 138 (quoting *Lauterbach* v. *State* [1915], 132 Tenn. 603).

From the authorities cited by the parties and from the court's independent research, it would appear that if the defendant's actions may be classed as criminally negligent and if they constituted one of the causes which resulted in the death of James McQueeney, the defendant may not now be heard to raise McQueeney's contributory negligence as a defense, unless he can affirmatively establish that McQueeney's negligence was the sole proximate cause of his own death.

Criminal negligence is defined in R.C. 2901.22(D). An excellent discussion of that section and its import may be found in *State* v. *Ovens* (1974), 44 Ohio App. 2d 428, 430-431 [73 O.O.2d 540]:

"R.C. 2901.22(D), Culpable mental states, reads as follows:

" '(D) A person acts negligently, when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.'

"See Legislative Service Commission Comment, pages 01-45 and 01-46. The Ohio Legal Center Institute Commentary on this section at page 01-47 states:

" 'Section 2901.22(D) defines a higher degree of negligence than ordinary negligence, although the form of the definition is similar to that used for ordinary negligence in tort law. * * *'

"In spelling out a definition for negligence the legislature indicated that something more was required than the failure to exercise due care as previously provided by law. We must determine under the new definition whether or not the defendant under the facts in this case had a 'substantial lapse' from due care.

" 'Substantial,' as defined in the American Heritage Dictionary of English Language (1969, 1970), is as follows:

" '1. Of, pertaining to, or having substance; material.

" '2. Not imaginary; true; real. 5. Considerable in importance, value, degree, amount, or extent: won by substantial margin.'

" 'Lapse' is defined as follows: '1a. To fall away by degrees; decline; banish: my enthusiasm soon lapsed. b. To subside gradually; drift; lapse into dreaminess.'

"As a noun, it is defined as: '1. The act of lapsing, a gradual or imperceptible falling or sliding away. 3. A slipping into a lower state or degree; a decline: lapse into premature senility.'

"Ohio Jury Instructions (Prov. Crim. 1974) 52, Section 409.31 states:

" 'C. Substantial. You will observe that the lapse or failure to use due care must be substantial. The lapse must be a material departure from the standard of due care. * * *

" 'Comment. Further elaboration of the word "substantial" may lead to error.'

"The word 'substantial' is a relative and not an exact term. It has been said to be as elusive a word as the English language contains, and is of varied meaning. It is susceptible of different meanings according to the circumstances of its use, and in considering the word it must be examined in its relation to the context, and its meaning is to be gauged by all the circumstances surrounding the transaction with respect to which it has been used. 83 Corpus Juris Secundum 762, et seq., Substantial."

Applying the *Ovens* rationale to the facts before this bench, the conclusion is inescapable that the actions of the defendant, in driving a motor vehicle on the streets of this community while under the influence of alcohol and at twice the posted speed limit, were a "substantial

lapse from due care," which could warrant those actions being classed as criminally negligent.

Certainly the actions of the decedent were no less negligent than those of the defendant and there can be no doubt but that his actions contributed to his demise. However, for the purpose of this motion, the question to be answered is: can the court say, as a matter of law, that the decedent's negligence, *alone,* resulted in his death?

The defendant has cited the court to the case of *State* v. *Vaught* (1978), 56 Ohio St. 2d 93 [10 O.O.3d 224] in support of his contention that he is entitled to a dismissal of this charge at this juncture. His position is that it would be impossible for the trier of fact to determine in this case whose acts, his or the decedent's, were the proximate cause of death.

A thorough reading of *Vaught, supra,* reveals the following language:

"It is established law in Ohio that one cannot be convicted of a crime in the absence of evidence as to each element of that crime 'which *if believed,* would convince the average mind of the defendant's guilt beyond a reasonable doubt.' *Atkins* v. *State* (1926), 115 Ohio St. 542, 546, cited in *State* v. *Walker* (1978), 55 Ohio St. 2d 208, 210 [9 O.O.3d 152]." (Emphasis *sic.*) *Id.* at 94.

Whether the defendant's actions constituted a substantial lapse from due care and whether the decedent's actions were the proximate cause of his own death are questions properly submitted to the trier of fact. Evidence has been presented as to each element of the offense charged. This court cannot say, as a matter of law, that that evidence, if believed, *would not* convince the average mind of the defendant's guilt beyond a reasonable doubt. Therefore, the court finds that the defendant's motion to dismiss is not well-taken and it is hereby overruled.

*Motion to dismiss overruled.*